# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | | |
|---|---|---|
| JANE DOE 1, JANE DOE 2, and JANE DOE 3 <br>    Plaintiffs, <br><br> v. <br><br><br> GREGG GARNER, an individual, GLOBAL OUTREACH DEVELOPMENTS INTERNATIONAL (G.O.D), a nonprofit corporation, INSTITUTE FOR G.O.D. INTERNATIONAL, a nonprofit corporation, THE CHURCH COMMUNITY FOR G.O.D., a nonprofit corporation, and DOES 5-20, inclusive, <br>    Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 3:26-cv-00231 <br><br> Judge Crenshaw <br><br> Magistrate Judge Frensley |

## DEFENDANT GREGG GARNER'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO SEAL COMPLAINT PENDING INITIAL MERITS REVIEW

Defendant Gregg Garner sought emergency relief to seal the Complaint after demonstrating that the Complaint was already being circulated in the community before service was even effected—indicating that persons with "inside knowledge" of the filing, namely the Jane Doe Plaintiffs or those acting in concert with them, were disseminating the allegations outside the courthouse. See Doc. 15, Page ID# 109-111.

The events that followed only confirmed that Mr. Garner's concern was not speculative. Instead of rebutting his showing that the Complaint was already being circulated by persons with inside knowledge, Plaintiffs' Response sought to normalize that very conduct, and the dissemination continued after the emergency motion was filed. Plaintiffs thus did not refute the

existence of coordinated extra-judicial publicity; they attempted to justify it. See Doc. 17, Page 4 of 9, PageID#126.

Plaintiffs' Response in Opposition, Doc. 17, never actually denies that Plaintiffs or those aligned with them helped spread notice of the Complaint to third parties. That silence is telling. Rather than disavowing the dissemination, Plaintiffs go out of their way to defend the conduct of Mr. Garner's co-defendants, calling the communications "responsible notices," asserting they were sent by Stephen Carver and Jeff Sherrod "in a leadership capacity," and contending that they do not amount to "private spite," "public scandal," or a "reservoir[] of libelous statements." Doc. 17, Page 4 of 9, PageID#126. Plaintiffs double down in their conclusion by describing the same communications as "institutional disclosures by [Garner's] co-defendants." *Id.* Page 7 of 9, PageID#129. That is a curious and revealing posture for supposedly adverse parties, and it further supports the inference of coordination in a campaign to publicize and legitimize the accusations outside the courthouse.

Plaintiffs' invocation of GRACE is particularly revealing. On page 4, Plaintiffs say the Sherrod/Carver emails referenced a "board-commissioned independent investigation" and emphasize that GRACE "was publicly announced by G.O.D. International in November 2025." Doc. 17 at 4. But if the GRACE process was authorized and publicized by G.O.D. International and related leadership, then Plaintiffs are not identifying some neutral third-party source of public interest disconnected from the alleged smear campaign. They are identifying the same institutional apparatus. Plaintiffs cannot recast coordinated publicity as benign simply by inserting the word "independent" before an investigation that their allies commissioned, announced, and used as a vehicle to solicit and legitimize accusations. Their argument confirms that the lawsuit and the

GRACE process were being advanced in tandem through the same leadership channels. That is probative of coordination, not exculpatory of it.

Put differently, Plaintiffs do not rebut the existence of a coordinated campaign; they merely argue that the campaign began before the Complaint was filed and was routed through GRACE and co-defendant "institutional disclosures." That concession strengthens, rather than weakens, the inference of collusion.

Plaintiffs' statement that "[t]he filing of this lawsuit did not create the public interest in Garner's conduct; his own conduct did," Doc. 17 at 4, is also telling because it assumes as true the very accusations that remain unproven and ignores the actual issue raised by the sealing motion: whether aligned actors are using the Complaint and surrounding institutional messaging to amplify scandal before any adjudication on the merits.

Plaintiffs invoke *In re Knoxville News-Sentinel Co.* but sidestep the very principle that matters most here: court records should not be used "to gratify private spite or promote public scandal" or as "reservoirs of libelous statements for press consumption." 723 F.2d at 474 (quoting *Nixon*, 435 U.S. at 598). Yet that is precisely what Plaintiffs' Response reveals. Rather than denying the spread of the Complaint and its allegations beyond the courthouse, Plaintiffs defend those acts as "institutional disclosures" tied to an "independent investigation." In doing so, Plaintiffs effectively concede that the allegations were being circulated outside this Court through aligned channels while this motion was pending.

That conduct makes Plaintiffs' request for equitable relief untenable. Plaintiffs seek to conceal their own identities while permitting the accusations themselves to be publicized, repeated, and legitimized in the public sphere. Equity does not permit parties to wield anonymity as both sword and shield—to hide themselves while ensuring maximum reputational harm to the opposing

party through public dissemination of unproven allegations. For that reason as well, Plaintiffs' request to proceed pseudonymously should be denied, which Mr. Garner will address separately in his opposition to Plaintiffs' Motion to Proceed Under Pseudonyms [Doc. 6].

In response to Mr. Garner's Emergency Motion to Seal Complaint which was filed on 4:26 p.m. CST on March 6, 2026, a third party website published the *entire Complaint.*[1] The site's embedded metadata reflects a publication time of "2026-03-06T21:22:59-0500", which corresponds to 8:22:59 p.m. CST on March 6, 2026, nearly four hours after Defendant's emergency motion to seal was filed, and over two hours after the Jane Doe Plaintiffs' Response in Opposition was filed [Doc. 17] at 6:13 p.m. CST on March 6, 2026.

Defendant also has been made aware of an additional email disseminated on Sunday, March 8, 2026, after the emergency filing that circulated the lawsuit and allegations further. *See* **Exhibit A** attached hereto. Exhibit A is another mass "Media Update for Parents" email distributed from Academy for GOD to the parent mailing lists signed by Ms. Alison Sherrod, Lead Administrator. The email states that the school has been "cautioned" the lawsuit "will bring media attention," that the school/ministry is "preparing for it," and that it expects "news stories, including national stories," with a representative needing to speak "on camera," not only through written statements.

It further represents that the Academy has been in daily contact with "legal support," "academic counsel," "accreditation boards," and "professional crisis management support," and it provides operational guidance about handling press presence and interviews, including that the school will choose who to speak with. In a follow-up message contained in the same exhibit, Ms.

---

[1] https://godisacult.com/hotline/god-intl-and-gregg-garner-sued-for-sex-trafficking-and-forced-labor (Last accessed on March 10, 2026 at 12:00 pm CST)

Sherrod reports that "as anticipated," a Tennessean article had already been released, that The Tennessean had already been contacted about a "serious error," and that the paper responded it would be updating the article—demonstrating immediate engagement with media coverage regarding the allegations.

Taken together, Exhibit A reflects advanced anticipation of, and active response planning for, media coverage tied to the lawsuit—communication that is particularly notable given the Sherrods' direct involvement and interests in the broader dispute surrounding Mr. Garner.

## CONCLUSION

Since the filing of Mr. Garner's Emergency Motion to Seal, subsequent publications and coordinated communications have substantially frustrated the practical relief sought by that motion. The question is no longer whether first disclosure can be prevented; it cannot. The Complaint has been pushed into the public domain, and its most inflammatory allegations can now be replicated and redistributed indefinitely. Those developments matter because they reveal an inequitable posture: Plaintiffs and aligned actors have publicized the allegations while asking the Court to conceal Plaintiffs' identities. Although Mr. Garner does not withdraw his request for such prospective relief as may still mitigate further harm, he respectfully submits that these post-filing actions independently weigh against allowing Plaintiffs to proceed under pseudonyms.

Respectfully submitted,

/s/ Bryant Kroll
Bryant Kroll (#33394)
The Law Office of Bryant Kroll
P.O. Box 219,
Pegram, TN 37143
Bryant@BryantKroll.com
Office: (615) 994-1837

/s/ James W. Cobb
James W. Cobb (#033248)
Cobb Law Group
131 Walton Ferry Road
Suite 11
Hendersonville, TN 37075
James@CobbLawTn.com
Office: (615) 649-0049

*Attorneys for Defendant Gregg Garner*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon the following via this Court's electronic CM/ECF filing system:

Vanessa Baehr-Jones
Advocates for Survivors of Abuse PC
4200 Park Boulevard
No. 413
Oakland, CA 94602
*Attorney for Plaintiffs*

Heather M. Collins
HMC Civil Rights Law, PLLC
302 Peachtree Street
Nashville, TN 37210
*Attorney for Plaintiffs*

This 10th Day of March, 2026

/s/ Bryant Kroll
Bryant Kroll (#33394)

6