IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JANE DOE 1, JANE DOE 2, JANE DOE 3,

                *Plaintiffs*,

v.

GREGG GARNER, et al.

                *Defendants*.

Case No. 3:26-cv-00231

District Judge Crenshaw
Magistrate Judge Frensley

**REPLY TO GARNER'S OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED UNDER PSEUDONYM**

Defendant's opposition (Doc. 20) to Plaintiffs' Motion to Proceed Under Pseudonym mischaracterizes both the *Porter* standard and the record before the Court, and it ignores the specific, egregious facts that distinguish this case from the authority on which he relies. Accordingly, Plaintiffs Jane Does 1-3, through their undersigned counsel, respectfully submit this Reply in support of their Motion to Proceed Under Pseudonym and request the Court grant the motion.

INTRODUCTION

Defendant devotes the bulk of his Opposition to a single proposition: that *Ramsbottom v. Ashton*, No. 3:21-cv-00272, 2021 U.S. Dist. LEXIS 119989 (M.D. Tenn. June 28, 2021), controls and forecloses pseudonymity here. It does not. *Ramsbottom* was decided on a materially different record, under a different factual posture, and its holding does not extend to a case involving decades of calculated grooming, institutional coercion, ongoing harassment after disclosure, and a defendant who remains in Plaintiffs' neighborhood. Importantly, in *Ramsbottom*, the case was initiated by named plaintiffs, it was only the addition of a third plaintiff who sought anonymity, which was a more difficult assertion given the waiver by the

1

first two plaintiffs. *Id*. at \*2. *Doe v. Porter* vests this Court with broad discretion to evaluate the full constellation of facts, and the instant facts favor pseudonymity. 370 F.3d 558, 560 (6th Cir. 2004).

ARGUMENT

      I.      <u>The Court May Rely on the Collins Declaration in Deciding the Motion</u>

As an initial matter, Defendant moves to strike the Declaration of Heather Moore Collins as hearsay. That argument fails on multiple grounds.

A motion to proceed under pseudonym is a non-dispositive procedural motion, and courts do not apply strict evidentiary rules to declarations submitted in support of such motions. *See, e.g.*, *In re Ins. Premium Loc. Tax Litig.*, No. CIV.A. 06-141-DLB, 2008 WL 544474, at \*3 (E.D. Ky. Feb. 25, 2008) ("I decline to strike the exhibits attached to plaintiffs' reply memorandum, even though some of the exhibits are clearly hearsay. In this preliminary stage of discovery proceedings, the Federal Rules of Evidence—while not necessarily without application—should not be rigidly applied to procedural motions.") The purpose of the declaration is to apprise the Court of background facts relevant to the exercise of its discretion, not to establish trial-admissible evidence for a jury.

Regardless, the Collins Declaration recounts facts about which she has personal knowledge through her direct representation of Plaintiffs, including events she personally observed and reviewed. To the extent any portion of the declaration describes communications between Plaintiffs and Defendant Garner, those statements are not hearsay, Garner's own out-of-court statements constitute party admissions under Federal Rule of Evidence 801(d)(2). Defendant's hearsay argument amounts to nothing more than a demand that Plaintiffs attach exhibits to a preliminary procedural motion, which is not required for the Court to rule here.

2

Finally, Defendant's privilege-waiver theory is without merit and irrelevant to the Court's ruling on this motion. Submitting a declaration describing client-authorized factual representations and Defendant's communications does not result in a broad subject-matter waiver.

## II.    Defendant Misapplies the *Porter* Framework

Defendant argues that because the first and third *Porter* factors do not affirmatively favor Plaintiffs, specifically that this suit does not challenge governmental activity and Plaintiffs do not risk criminal prosecution, that those factors "weigh against" pseudonymity. (Opposition, Doc. 20 p. 3). However, this mechanical reading distorts *Porter*. The four factors are non-exhaustive considerations that inform the Court's discretionary balancing; they are not a checklist where inapplicable factors automatically count against the moving party. *See Porter*, 370 F.3d at 560. Indeed, "other factors" may be considered in determining whether plaintiff would risk suffering injury. *Id*. (*citing Doe v. Stegall*, 653 F.2d 180, 185-186 (5th Cir. 1981). These factors include "the defendant's right to mount a defense, the potential of psychological harm to a plaintiff subject to public identification, and whether the plaintiff might suffer harm to his reputation and economic interests." *Poe v. Lowe*, 756 F. Supp. 3d 537, 544 (M.D. Tenn. 2024). All these factors weigh in favor of anonymity here. The critical inquiry is whether Plaintiffs' privacy interests "substantially outweigh the presumption of open judicial proceedings." *Porter*, 370 F.3d at 560

While Defendant is correct that the fourth factor formally asks whether the *present* litigant is a child (Opposition, Doc. 20 p. 3), his argument ignores how courts consider vulnerability in the broader balancing inquiry. Two Plaintiffs were minors, ages fifteen and seventeen, when Defendant Garner began systematically grooming them. (Complt., Doc. 1 ¶¶90, 135). That grooming was not incidental; it was the predicate act that enabled decades of

3

subsequent exploitation, control over employment, housing, children's education, and spiritual community, and ultimately the sexual abuse alleged in the Complaint. (Complt., Doc. 1 ¶¶ 36-37). The age at which Garner targeted his victims is directly relevant to the "additional factors" inquiry under *Porter*, including the psychological vulnerability of the parties and the magnitude of the harm that public disclosure would cause. The fourth *Porter* factor does not weigh against Plaintiffs; it is simply neutral as a formal matter, while the underlying facts of minor-targeted grooming remain highly relevant to the broader balancing test.

III. The "Utmost Intimacy" Factor Is Not Standing Alone

Defendant's central argument is that the second *Porter* factor, utmost intimacy, cannot carry Plaintiffs' motion by itself, and that *Ramsbottom* held as much. But Plaintiffs are not relying on a single factor. The full record presents a combination of circumstances that, taken together, far exceed the threshold for granting anonymity.

First, the allegations here describe years of coerced sexual behavior against multiple women at the same time by a church and school leader that included drug-facilitated assault, forced oral sex, genital exposure, and intimate image exchanges perpetrated by Plaintiffs' pastor, employer, marriage counselor, and the administrator of their children's school. This is not the case of an adult who had a relationship with another adult and now alleges misconduct. It is a case of comprehensive, multi-decade institutional coercion designed to eliminate Plaintiffs' capacity to refuse.

Second, unlike the plaintiff in *Ramsbottom*, Plaintiffs here face a defendant who remains embedded in their neighborhood, who continues to exert influence over the school their children attend, and who has already demonstrated a willingness to intimidate and harass them after they came forward. The harassing conduct, 21 messages and 10 calls within 25 minutes, an organized

4

reputation-smearing campaign within the church community, instructions to destroy Signal evidence, and scripted false testimony demonstrates not speculative but demonstrated retaliatory conduct. (Complt., Doc. 1 ¶ 86). That conduct is not attorney argument; it is the factual basis for Plaintiffs' well-founded fear, and the underlying communications are available for production. Third, unlike the plaintiffs in *Ramsbottom*, these Plaintiffs have maintained the confidentiality of their identities. While their identities are known to Defendants, their counsel, and law enforcement; they have not entered the public sphere voluntarily.

Finally, the Sixth Circuit has recognized "[r]eligion is perhaps the quintessentially private matter," thus, the fact that this case involves Plaintiffs' religion and their allegations that Defendants used cult like techniques further favors granting them anonymity. *Porter*, 370 F.3d at 560. (Complt., Doc. 1 ¶ 31, 32, 42). Where "the [plaintiffs] have, by filing suit, made revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior" anonymity is warranted. *Porter*, 370 F.3d at 560. *See also Kennedy v. Gaunt*, 17 F.3d 980 (7th Cir. 1994) (plaintiffs claimed a statement that they were unsuitable adoptive parents because they belonged to a cult imputed to them the "crime" of unfit parenthood which is a violation of criminal child abuse/neglect statutes). Courts have typically granted anonymity in civil cases alleging Trafficking Victims Protection Act claims based on similarly coercive religious environments. *See, e.g.*, *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 180 n.28 (E.D.N.Y. 2024) (listing plaintiffs alleging sex trafficking offenses against former leaders of NXIVM, including two "Jane Does"); *Doe v. Athens Cnty.*, No. 2:22-CV-855, 2025 WL 689270, at *1 (S.D. Ohio Mar. 4, 2025) (sex trafficking case involving victim of religious cult).

Considered together, these factors, the utmost intimacy of the sexual abuse allegations, their religious affiliation, the minors' grooming history, the documented post-disclosure harassment, the tight-knit religious community where retaliation is already occurring, and the ongoing proximity of the Defendant and the possibility of reputational and economic harm provide far more than a single basis for pseudonymity. The totality of this record satisfies *Porter*'s balancing standard.

V. Public Interest Supports Protecting Plaintiffs' Identities

Defendant continues to cite *Ramsbottom* for the proposition that the public has no cognizable interest in maintaining the anonymity of every sexual assault plaintiff. (Opposition, Doc. 20 pp. 4-6). But Plaintiffs do not rely on a generalized assertion of sensitivity as to all sexual assault survivors, and instead, present case-specific facts weighing in favor of granting anonymity here. Defendant was the pastor and CEO of a religious organization with a substantial community following that Plaintiffs and their families are still a part of; there are likely additional victims who have not yet come forward, but would likely be dissuaded from doing so if it also came with a risk of public exposure; public identification of Plaintiffs would expose their minor children to community retaliation, similar to the behavior in *Porter*; and the tight-knit religious setting means their children's education and the Plaintiffs' own employment continues to depend on their connection to Defendants. The dynamics of social control and ostracization that are part of the Complaint's allegations pose an ongoing threat to Plaintiffs, especially as Defendant Garner has already attempted to retaliate and threaten Plaintiffs. These are concrete, case-specific public interests that favor anonymity and that distinguish this matter from two-party sexual misconduct claim.

6

Finally, at this stage of the proceedings, the Court must rely on the Complaint's allegations and the Collins Declaration, and not Defendant's mischaracterizations of the case. Defendant Garner aims to minimize his role in a coercive sex trafficking venture by mischaracterizing his sexual abuse as "adult affairs." Opp. at 5. Defendant Garner will have the chance to challenge Plaintiffs' facts at the summary judgment stage, but at this stage of the proceeding, the relevant record before the Court are Plaintiffs' Complaint and its allegations and the Collins Declaration, not Garner's self-serving denials in the form of attorney argument.

## VI. Defendant Suffers No Cognizable Prejudice

Defendant argues that pseudonymity might prevent unknown third-party witnesses from coming forward. But Defendant already knows Plaintiffs' identities and can investigate any potential witnesses through discovery. Plaintiffs anticipate the parties will enter a protective order, for purposes of discovery proceedings, that will facilitate the exchange of highly confidential victim information. Defendant's claim of prejudice with respect to settlement posture and trial dynamics is precisely the kind of tactical argument that courts have recognized as insufficient to override legitimate privacy interests where those interests are otherwise established. Any risk of litigation asymmetry is adequately addressed through the protective-order framework Plaintiffs have proposed.

## VII. Defendant's Claims of Plaintiffs' Post-Filing Misconduct Are Baseless

Defendant's most inflammatory argument: that Plaintiffs orchestrated public dissemination of the Complaint to manufacture reputational harm while seeking the protection of pseudonymity is factually unsupported and legally irrelevant to this motion. (Opp. at 14.) The Complaint is public record, available online, this is precisely why Plaintiffs seek protection. The mere fact that a publicly filed court document became publicly available does not establish that

7

Plaintiffs directed its dissemination. Nor does it establish bad faith. Defendant's argument that Plaintiffs are wielding pseudonymity as a "sword-and-shield" litigation tactic is rank rhetoric. Defendants' actions gave rise to this litigation, nothing more.

CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiffs' memorandum, Plaintiffs respectfully request that the Court grant their Motion to Proceed Under Pseudonym and enter an order: (a) permitting Plaintiffs to proceed in this action under the pseudonyms "Jane Doe 1," "Jane Doe 2," and "Jane Doe 3"; (b) barring disclosure of Plaintiffs' true names or other identifying information; and (c) requiring that any documents containing such information be filed under seal or with appropriate redactions.

Dated: March 17, 2026                         Respectfully submitted,

*/s/ Heather Moore Collins*
Heather Moore Collins BPR # 026099
**HMC Civil Rights Law PLLC**
302 Peachtree Street
Nashville, TN 37210
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com

*-- and --*

*/s/ Vanessa Baehr-Jones*
Vanessa Baehr-Jones CABN # 281715
(*Pro Hac Vice*)
**Advocates for Survivors of Abuse PC**
4200 Park Boulevard No. 413
Oakland, CA 94602
(510) 500-9634
vanessa@advocatesforsurvivors.com

*Attorneys for the Plaintiffs*

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was served via the Court's CM/ECF filing system on March 17, 2026, and will be mailed with the complaint and summons to each Defendant's registered agent for service of process.

*/s/ Heather Moore Collins*
Heather Moore Collins

9